UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. DESSERTS, INC.,<br><br>                Plaintiff,<br><br>     v.<br><br>65 WALL HOLDINGS, LLC,<br><br>                Defendant. | Case No. 2:25-cv-12271-FLA (Ex)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. 12]** |

On December 29, 2025, Plaintiff L.A. Desserts, Inc. ("Plaintiff") filed the subject *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Application"). Dkt. 11-3 (unredacted); Dkt. 12 (redacted).[1] Plaintiff states it entered into a binding settlement agreement, dated April 7, 2025, (the "Agreement") with Defendant 65 Wall Holdings, LLC ("Defendant" or "65WH"), in connection with a prior trademark action styled *L.A. Desserts, Inc. v. 65 Wall Holdings, LLC*, 2:24-cv-08532-SIL (E.D.N.Y.) (the "Prior Action"), related to Plaintiff's trademark "THE IVY®." *Id.* at 8. According to

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

1

Plaintiff, Defendant violated Plaintiff's registered trademarks and breached the Agreement by, *inter alia*, using the term "The (NY) Ivy" in connection with the restaurant at issue in the Prior Action. *Id.* at 13–14. Defendant has not filed a response to the Application, despite receiving notice. *See* Dkt. 19 (Lackman Decl.).

Plaintiff requests the court issue a temporary restraining order:

1. enjoining Defendant …, and its representatives, agents, servants, employees, partners, members, principals, and any company or entity that it owns or controls, from further violating the terms of the Confidential Settlement Agreement …;

2. enjoining Defendant, and its representatives, agents, servants, employees, partners, members, principals, and any company or entity that it owns or controls, from using the phrase "The Ivy" or any phrase that gives off the commercial impression of "The Ivy" (including with or without a space separating "The" and "Ivy" (e.g., "TheIvy" or "theivykitchenandbar.com") and use of the geographic indicator or design element "NY" between "The" and "Ivy") including, but not limited to, in connection with external signage, neon signs, internal signage, menus, reviews on the website, and all other references appearing on 65WH's website and other marketing materials, including static social media use (e.g., "bio" or "about" sections, account names on social media) and future online posts on any platform of any type, with the sole exception of the Instagram handle "@theivy" (the "Instagram Handle"); and

3. requiring that 65WH will take commercially practicable steps to update the listings on third party sites associated with its restaurants to remove uses of any phrase that reads, or is intended to read, as "The Ivy" (including with or without a space separating "The" and "Ivy") including, but not limited to, in connection with external signage, neon signs, internal signage, menus, reviews on the website, and all other references appearing on 65WH's website and other marketing materials, including static social media use (e.g., "bio" or "about" sections, account names on social media) and future online posts on any platform of any type, with the sole exception of the Instagram Handle.

Dkt. 11-3 at 2–3.

*Ex parte* applications are requests made to the court outside the framework of the ordinary rules for notice of a hearing. *Mission Power Eng'g Co. v. Cont'l Cas.*

*Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). *Ex parte* applications do not offer the opposing party a fair opportunity to respond and are "rarely justified." *Id.* at 490–91. To obtain *ex parte* relief, a moving party must present evidence to show that the moving party's cause will be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and that "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

A plaintiff seeking a preliminary injunction or temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984). The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements, such that "a stronger showing of one element may offset a weaker showing of another, as long as plaintiffs establish that irreparable harm is likely." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (quotation marks and citation omitted).

In the Complaint, Plaintiff asserts four causes of action for: (1) common law breach of contract; (2) trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (3) unfair competition and false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) common law trademark infringement and unfair competition. Dkt. 1 at 18–24.

/ / /

The Agreement states in relevant part:

a. Except as expressly permitted in this subsection 1.a., 65WH will remove current uses, and permanently refrain from future use, of the phrase "The Ivy" (including with or without a space separating "The" and "Ivy") including, but not limited to, in connection with external signage, neon signs, internal signage, menus, reviews on the website, and all other references appearing on 65WH's website and other marketing materials.  For the avoidance of doubt, this includes any static social media use (e.g., "bio" or "about sections, account names on social media) with the sole exception of the Instagram handle @theivy" (the "Instagram Handle") as provided in section 1.c., and future online posts on any platform of any type.

b. 65WH may use the term "Ivy" provided that:

i. "Ivy" is not immediately proceeded by the word "The";

ii. "Ivy" does not appear in a font substantially similar to the LAD Stylization; and

iii. "Ivy" does not appear in pink font or with any pink motifs or design elements.

c. 65WH will be permitted to retain and use the Instagram Handle provided that (i) the content posted to the associated Instagram account is in compliance with the restrictions contained in Sections 1.a. and 1.b[.]  …

e. 65WH will take commercially practicable steps to update the listings on third party sites associated with its restaurant, including but not limited to Yelp and OpenTable, so that they comply with the restrictions in paragraph 1.a. and 1.b.

Dkt. 11-1 at 3.  In exchange, the parties agreed to "release, waive, and forever discharge one another … from demands, causes of action, liabilities, or claims of any kind, whether in law or equity, whether known or unknown, asserted or unasserted, related to the Dispute, … except with respect to any obligations under [the] Agreement." *Id.* at 4.

Pursuant to these provisions, Plaintiff appears to have released all causes of action against Defendant except for the first cause of action for breach of contract.

4

*See id.* As to the remaining breach of contract claim, Plaintiff presents evidence Defendant failed to remove the term "The Ivy" from its website entirely (Dkt. 14-6 at 4–5, 8–9, 13–14, 17–18; Dkt. 14-12 at 4–5, 10), and that third-party websites, including Yelp, OpenTable, and MapQuest, continue to identify Defendant's restaurant as "The Ivy Kitchen and Bar" (Dkt. 14-7 at 20–23).

Because Defendant did not file a response to the Application timely, the court finds Plaintiff is entitled to a limited temporary restraining order on this basis and: (1) ENJOINS Defendant from using the term "The Ivy" in any portion of its website and menus, and (2) ORDERS Defendant to contact third-party websites (including Yelp, OpenTable, and MapQuest), identify the restrictions set forth in the Agreement, and request compliance.

The Application is otherwise DENIED, as Plaintiff fails to establish it is entitled to the injunctive relief requested. For example, while Plaintiff contends Defendant's use of the term "The (NY) Ivy" violates the Agreement because it includes a geographic indicator, the express terms of the Agreement require only that the word "'Ivy' is not immediately proceeded by the word 'The'"[.] *See* Dkt. 11-1 at 3. As a second example, Plaintiff contends Defendant breached the Agreement by maintaining "the same font as had previously been complained of." Dkt. 11-3 at 13. A reasonable factfinder, however, could determine that the font used by Defendant is not substantially similar to Plaintiff's font and does not violate the Agreement, since the letters in Defendant's font are straighter and lack the curved flourishes used by Plaintiff. *Compare id.* at 10 *with* 12. As a final example, while Plaintiff argues Defendant has continued to use the term "The Ivy" in social media posts, *id.* at 16, it is unclear whether the images and posts identified were new social media posts by Defendant in violation of the Agreement, or old posts by Defendant from before the Agreement and by unrelated third-parties which are allowed. *See* Dkt. 11-1 at 3 ¶ 1(c). Plaintiff, thus, fails to establish Defendant engaged in further acts that violated the terms of the Agreement based on the conduct identified.

Accordingly, the court GRANTS in part the Application and issues a temporary restraining order: (1) ENJOINING Defendant from using the term "The Ivy" in any portion of its website and menus consistent with the Agreement, and (2) ORDERING Defendant to contact third-party websites (including Yelp, OpenTable, and MapQuest), identify the restrictions set forth in the Agreement, and request compliance.  The court further ORDERS Defendant to show cause ("OSC") in writing, within fourteen (14) days of this Order why the court should not issue a preliminary injunction pursuant to the terms of this temporary restraining order.  The court will set the OSC for hearing if the court deems one necessary or appropriate. The Application is otherwise DENIED.

Plaintiff is ORDERED to serve a copy of this Order on Defendant via the e-mail addresses identified, Dkt. 19 at 1 ¶ 2, within two (2) business days of the date of this Order.

IT IS SO ORDERED.

Dated: January 20, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

6